**FILED**
**Dec 21, 2021**
**07:48 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | | |
|---|---|---|
| **TRACY WRIGHT,** | ) | **Docket No. 2019-04-0270** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 66044-2020** |
| **JOSHUA COOPER, d/b/a** | ) | |
| **J&K IMPROVEMENTS,** | ) | **Judge Robert Durham** |
| **Uninsured Employer.** | ) | |

---

## COMPENSATION HEARING ORDER GRANTING BENEFITS

---

At a December 7, 2021Compensation Hearing, the Court considered Tracy Wright's claim for medical, temporary disability, and permanent partial disability benefits. The employer, Joshua Cooper, d/b/a J&K Improvements, did not attend the hearing. The determinative issue was whether Mr. Wright was an employee or an independent contractor. The Court holds that Mr. Wright was Mr. Cooper's employee and awards medical, temporary total disability, and permanent partial disability benefits.

### History of Claim

Mr. Wright, a Tennessee resident, began working as a roofer with Mr. Cooper on May 18, 2020. He testified that he was hired as an employee and worked as a lead carpenter. In support of his claimed employee status, Mr. Wright testified that Mr. Cooper transported him to and from work and paid him hourly wages at the end of each project. At the beginning of his employment, he worked forty hours per week at $14.00 per hour, and at the end of May, Mr. Cooper raised his pay to $16.00 per hour. He continued to work forty hours per week until his injury.

On August 28, Mr. Wright fell from a roof and landed feet-first on concrete. Mr. Cooper witnessed the accident. Two days later, Mr. Wright went to the emergency room, where providers diagnosed a left calcaneal fracture. Dr. Jon Simpson performed surgery to repair the fracture using a plate and screws. Mr. Cooper refused to provide benefits.

Mr. Wright filed a Petition for Benefit Determination on October 7, 2020. Because Mr. Cooper admitted he did not have workers' compensation insurance, a

1

Bureau compliance specialist investigated the case, including Mr. Wright's employment status.

During the investigation, Mr. Cooper asserted that he did not have any employees, and he did all the work for JK Improvements himself. To the contrary, Mr. Wright stated that Mr. Cooper hired him as "lead carpenter." A co-worker corroborated this information to the investigator. Mr. Wright also told the specialist that Mr. Cooper controlled the conduct of the work, retained the right to hire and fire workers, scheduled the working hours, and furnished tools and equipment. However, Mr. Wright was able to offer his services to others when not employed by Mr. Cooper.

Regarding treatment of his injury, Dr. Simpson followed Mr. Wright after the surgery. According to Dr. Simpson's records, Mr. Wright's fracture healed satisfactorily, although he complained of continuing foot and ankle pain and swelling.

Dr. Simpson placed Mr. Wright at maximum medical improvement on January 7, 2021, and released him to return to work without restrictions. He stated later that Mr. Wright would have been "completely and totally unable" to work as a roofer before January 7.

Dr. Simpson prepared a C-32 Medical Report on July 15, 2021, to which he attached an extensive note outlining Mr. Wright's course of treatment. Dr. Simpson observed that Mr. Wright's fracture healed in a "good position although not perfect." He further noted that Mr. Wright complained of significant residual pain in his foot with some "mild" limitations on motion that should improve over time. However, Mr. Wright asserted that he could not get back on a roof due to his foot pain.

Significantly, Dr. Simpson stated that he had not seen or recommended treatment for Mr. Wright since January 7. For this reason, he designated the date of his report, July 15, as Mr. Wright's maximum medical improvement date. He did not assign any permanent restrictions and stated Mr. Wright could return to normal work activities. He also did not anticipate the need for further treatment other than possible "accommodative shoe wear." Finally, he assigned a permanent anatomical impairment of five percent to the whole person under the AMA Guides, 6th edition.

During the hearing, Mr. Wright presented bills from Cumberland Medical Center, Covenant Medical Group, Walgreens, MedStream Anesthesia, Radiology Imaging Associates, Cookeville Regional Hospital, Tier One Institute, and Advanced Spine and Pain Center, which he represented were incurred for his injury. These charges include emergency room care, surgery and hospitalization, x-rays and other diagnostic exams, post-surgical visits and orthopedic supplies. The charges for these bills total $19,974.05.

Dr. Simpson did not see Mr. Wright after January 7, and the expenses from Tier

2

One, Advanced Spine and Pain Center and Cookeville Regional Hospital were all incurred after that date with no suggestion that Dr. Simpson recommended treatment at the stated providers. Further, Mr. Wright did not offer any records from those providers.

Finally, Mr. Wright testified that he continues to have significant problems with his foot. He suffers from pain, swelling, and limited range of motion that prevents him from working as a roofer. His injury also prevents him from doing any work that requires significant standing or walking, and he has only performed odd jobs since his injury. Mr. Cooper did not offer to return him to work after Dr. Simpson released him, and even if he had, he did not believe his injury would permit him to perform the work. Mr. Wright's wife corroborated his limitations and lack of employment.

## Findings of Fact and Conclusions of Law

Mr. Wright has the burden of proving the essential elements of his workers' compensation claim by a preponderance of the evidence. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015).

### *Independent Contractor vs. Employee*

The first issue is whether Mr. Wright was an independent contractor or employee on the date of injury. Tennessee Code Annotated section 50-6-102(12)(D)(i) (2021) lists the following factors for making this determination:

*(a)* The right to control the conduct of the work;
*(b)* The right of termination;
*(c)* The method of payment;
*(d)* The freedom to select and hire helpers;
*(e)* The furnishing of tools and equipment;
*(f)* Self-scheduling of working hours; and
*(g)* The freedom to offer services to other entities.

Mr. Wright testified he was Mr. Cooper's employee, and Mr. Cooper did not offer any contrary testimony at trial. Mr. Wright also offered undisputed testimony that Mr. Cooper transported him to and from the jobsite and paid him by the hour upon completion of each job. He also told the compliance specialist during his investigation that Mr. Cooper hired him as lead carpenter and retained the right to control the work, scheduled the work hours, hired and fired workers, and provided tools and equipment. The only contrary evidence is Mr. Cooper's statement to the investigator that he did not have any employees, and he did all the work himself. Under these facts, the Court holds Mr. Wright proved by a preponderance of the evidence that he was Mr. Cooper's employee.

*Application of the Workers' Compensation Law*

The Court also holds Mr. Cooper was subject to the Workers' Compensation Law, regardless of the number of employees, because the uncontradicted evidence showed by a preponderance of the evidence that J&K Improvements was in the construction industry at the time of Mr. Wright's accident. *See* Tenn. Code Ann. § 50-6-902(a). Thus, Mr. Cooper must provide Mr. Wright with any benefits for an injury causally related to Mr. Wright's employment.

*Causation*

To prove causation, Mr. Wright must show that his accident arose "primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A). Mr. Wright's undisputed testimony clearly established that he fell off a roof while working for J&K Improvements on May 18, 2020. Further, Dr. Simpson's undisputed evidence proved "to a reasonable degree of medical certainty" that Mr. Wright sustained a left calcaneal fracture as a result. *See* Tenn. Code Ann. § 50-6-102(14)(C). Thus, the Court holds Mr. Wright met his burden of proof on the issue of causation.

*Medical Benefits*

As for medical benefits, Mr. Cooper did not offer any medical treatment as required by Tennessee Code Annotated section 50-6-204(a)(1)(A), so Mr. Wright sought treatment on his own. Whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances of each case. *Buchanan v. Mission Ins. Co.,* 713 S.W.2d 654, 656 (Tenn. 1986). The Court holds that Mr. Wright was justified in seeking emergency care for his injury. In support, the Court notes that Mr. Wright underwent surgery on his foot shortly after receiving emergency care.

In addition, Dr. Simpson's records stated the fracture required the surgery he performed as well as "extensive post-operative follow-up." Thus, the Court holds the post-surgical visits, diagnostic tests, and orthopedic appliances were reasonable and necessary for treatment of Mr. Wright's injury.

Mr. Wright testified that the medical expenses he submitted to the Court were those incurred for treatment of his work injury. Based on the undisputed evidence, the Court holds Mr. Cooper liable for the bills associated with the surgery and the treatment that Mr. Wright received through January 7, the date Dr. Simpson last saw Mr. Wright. However, the charges for treatment from Cookeville Regional, Tier 1 Institute, and Advanced Spine Pain and Nerve Center were incurred after January 7 and were not

supported by medical records. Thus, the Court holds that Mr. Wright did not prove these expenses were reasonable and necessary for treatment of his work injury.

The Court holds that Mr. Wright is entitled to reimbursement of $19,974.05 for services received from the providers identified in the medical bills submitted by Mr. Wright and proven by the uncontroverted evidence. *See Russell v. Genesco, Inc.*, 651 S.W.2d 206, 211 (Tenn. 1983). Dr. Simpson is also designated as Mr. Wright's authorized physician for future medical care.

*Temporary Total Disability Benefits*

To receive temporary total disability benefits, Mr. Wright must show he is likely to prove: (1) a disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Const. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016).

In his January 7, 2021 record, Dr. Simpson placed Mr. Wright at maximum medical improvement with no work restrictions. He also stated that from August 28, 2020, until January 7, Mr. Wright was totally unable to return to his previous employment due to his injury. Based on this evidence, the Court holds that Mr. Wright has proven entitlement to temporary total disability benefits from August 28, 2020, until January 7, 2021.

Tennessee Code Annotated section 50-6-207(1)(a) sets out that temporary total disability benefits are based on two-thirds of the injured employee's average weekly wage. The Court finds the undisputed evidence proved Mr. Wright worked forty hours per week during his employment with Mr. Cooper. He worked from May 18 through May 31 at $14.00 per hour and from June 1 until August 28 at $16.00 per hour. Based on this finding, the Court calculates Mr. Wright's average weekly wage to be $629.86, and two-thirds of this amount leads to a compensation rate of $419.91.

Thus, the Court holds that Mr. Cooper is obligated to pay Mr. Wright temporary total disability benefits in the amount of $7,978.29.

Mr. Wright also asserted entitlement to temporary disability benefits through July 15, 2021, the date Dr. Simpson placed him at maximum medical improvement in his C-32. Mr. Wright testified that Mr. Cooper never offered him employment after his injury, and that even if he had, he could not have returned to work as a roofer. His only employment since the injury has been occasional odd jobs.

Nevertheless, the Court holds that, given Dr. Simpson's opinions, Mr. Wright failed to prove entitlement to additional temporary disability benefits. While expert

medical testimony is not an "absolute prerequisite" to an award of temporary total disability benefits, any award "must be consistent with the medical evidence in the record." *Austin v. Genlyte Thomas Grp., LCC*, No. M2009-01601-WC-R3-WC, 2010 Tenn. LEXIS 654, at *11 (Tenn. Workers' Comp. Panel June 10, 2010).

The note attached to the C-32 by Dr. Simpson stated that July 15 was the date of maximum medical improvement. But the only reason he gave was that he had not seen Mr. Wright since January 7. Further, he did not revise his previous opinion that Mr. Wright could return to work with no restrictions as of January 7−an opinion he gave not only in January but also in April. Thus, the Court holds that Mr. Wright's asserted inability to work through July 15 is not consistent with Dr. Simpson's expert opinion and denies his claim for additional temporary disability benefits.

*Permanent Partial Disability Benefits*

Mr. Wright also claimed entitlement to permanent partial disability benefits under Tennessee Code Annotated section 50-6-207(3)(A). The statute provides that an original award of permanent partial disability benefits shall be paid at the employee's compensation rate for the number of weeks calculated by multiplying the assigned impairment rating by 450 weeks. Dr. Simpson assessed a permanent impairment of five percent; thus, the Court holds that Mr. Wright proved entitlement to 22.5 weeks of permanent partial disability benefits at a compensation rate of $419.91, for a total of $9,447.98, which Mr. Wright is obligated to pay in a lump sum.

Section 50-6-207(3)(B) further provides that, if at the end of Mr. Wright's compensation period, which is calculated as 180 days after he reached maximum medical improvement, he is making less than 100% of his pre-injury wages, then he may petition the Court for additional permanent partial disability benefits. Dr. Simpson placed Mr. Wright at maximum medical improvement on July 15, 2021; thus, he becomes eligible to apply for additional benefits on January 11, 2022. **Mr. Wright must file a Petition with the Bureau no later than January 11, 2023, if he wishes to pursue this claim.**

*Uninsured Employers Fund*

Finally, although this Court holds Mr. Cooper must provide Mr. Wright with benefits, payment might not occur, since Mr. Cooper did not have workers' compensation insurance at the time of the accident. Therefore, the Court considers whether Mr. Wright is eligible to apply for benefits from the Bureau's Uninsured Employers Fund. Under Tennessee Code Annotated section 50-6-802(a), the Bureau has *discretion* to pay limited benefits to Mr. Wright if he proves the following:

1) He worked for an employer who did not have workers' compensation insurance;

6

2) He suffered an injury arising primarily in the course and scope of employment on or after July 1, 2015;

3) He was a Tennessee resident on the date he was injured;

4) He provided notice to the Bureau of the injury and of the failure of the employer to secure payment of compensation within a reasonable period, but no longer than 180 days after the date of his injury.

Tenn. Code Ann. § 50-6-801(d).

The Court finds that Mr. Wright worked for an employer that did not have workers' compensation insurance, and that he proved by a preponderance of the evidence that he suffered an injury on August 28, 2020, arising primarily from his employment with an uninsured employer. He was a Tennessee resident on the date he was injured, and he provided notice to the Bureau of his injury and Mr. Cooper's lack of insurance within 180 days. Therefore, Mr. Wright satisfied all the requirements of section 50-6-801(d). **He must complete the enclosed form within sixty days of the date of this Order for consideration of a *discretionary payment* through the Uninsured Employers Fund.** *See,* Tenn. Code Ann. § 50-6-801(a).

IT IS, THEREFORE, ORDERED that:

1. Mr. Cooper shall pay the medical bills Mr. Wright incurred for treatment of his August 28, 2020 work injury in the amount of $19,974.05. He shall continue to provide reasonable and necessary treatment for the injury under Tennessee Code Annotated section 50-6-204(a)(1)(A). Dr. Jon Simpson is designated the authorized treating physician.

2. Mr. Cooper shall pay Mr. Wright $7,978.29 in temporary total disability benefits, to be paid in a lump sum. Mr. Wright's claim for additional temporary total disability benefits is denied.

3. Mr. Cooper shall pay Mr. Wright $9,447.98 in permanent partial disability benefits, to be paid in a lump sum. Mr. Wright may petition the Court for additional permanent partial disability benefits if, based on his employment circumstances on January 11, 2022, he believes he is entitled to a resulting award. **He must file the petition with the Court no later than January 11, 2023**.

4. Mr. Cooper is eligible to request benefits from the Uninsured Employers Fund at the *Administrator's discretion.* To do so, he must complete and file the attached form within sixty days of the date of this Order.

5. This Compensation Order constitutes a final adjudication upon the merits of Mr. Wright's claim for benefits.

6. Mr. Cooper shall pay court costs of $150.00 to the Court Clerk within five business days of this order becoming final.

7. Mr. Cooper shall prepare and file with the Court Clerk a Statistical Data Form within ten business days of the date this order becomes final.

8. Unless appealed, this order shall become final in thirty days.

**ENTERED December 21, 2021.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1. Request for Investigation Report
2. Various photographs
3. Mr. Wright's Wage Summary
4. C-32 Written Medical Report
5. C-30 Final Medical Report
6. Dr. Simpson's Medical Records
7. Prescription receipts and medical bills
8. J&K Improvements Commercial Liability Policy

Technical Record:

1. Petition for Benefit Determination
2. Scheduling Order
3. Notice of Compensation Hearing
4. Dispute Certification Notice
5. Expedited Hearing Order Entered January 29, 2021
6. Expedited Hearing Order Entered March 9, 2021

# CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on December 21, 2021.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Tracy Wright | X | | X | 123 Stone Avenue, Apt. 2 Crossville, TN 3855 wrightnormantracy@gmail.com |
| Joshua Cooper | X | | X | 150 Grandview Drive, Crossville, TN 38555 Jkimprovements20@gmail.com |
| Uninsured Employers Fund | | | X | Lashawn.pender@tn.gov Amanda.Terry@tn.gov |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

**Statement of the Issues on Appeal**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

**Parties**

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*